UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **JILL CRAIL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) CAUSE NO. 1:14-cv-2125-WTL-DKL |
| | ) |
| **I.C. SYSTEM, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT

The Plaintiff brings this action against the Defendant under the Fair Debt Collection Practices Act ("FDCPA"). This cause is before the Court on the parties' cross-motions for summary judgment. Both motions are fully briefed, and the Court, being duly advised, now **GRANTS** the Defendant's motion (Dkt. No. 45) and **DENIES** the Plaintiff's motion (Dkt. No. 47) for the reasons and to the extent set forth below.

### I.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed, and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.").

When the Court reviews cross-motions for summary judgment, as is the case here, "we construe all inferences in favor of the party against whom the motion under consideration is made." *Speciale v. Blue Cross & Blue Shield Ass'n*, 538 F.3d 615, 621 (7th Cir. 2008)

(quotation omitted). "'[W]e look to the burden of proof that each party would bear on an issue of trial.'" *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007) (quoting *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)). However, a party who bears the burden of proof on a particular issue may not rest on its pleadings, but must show what evidence it has that there is a genuine issue of material fact that requires trial. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.,* 242 F.3d 713, 723 (7th Cir. 2001) (citation omitted).

## II.   FACTUAL BACKGROUND

Plaintiff Jill Crail subscribed to and received AT&T's Uverse service. She could not pay her bill, and her account went into default. Crail received collection letters from AT&T and two debt collectors prior to receiving a letter from the Defendant. Crail received from the Defendant a debt collection letter dated January 1, 2014, indicating a "balance due" of $1,065.76. Dkt. No. 48-1. The letter also contained the following statements: "The balance shown above is the amount due as of the date of this letter. This amount may change due to interest or other charges that may be added to the account after the date of this letter." *Id.* Crail received no other letters from the Defendant, and no interest or other charges were added to her account after January 1, 2014.

Crail filed suit in this Court on December 31, 2014, alleging that the statement in the Defendant's dunning letter warning of the potential addition of interest and other charges to her account balance violated the FDCPA. In her complaint, she alleges that the Defendant violated 15 U.S.C. §1692d by engaging in conduct intended to harass her by threatening interest and

2

additional charges that would not accrue; violated §1692e by misrepresenting the character of the debt; and violated § 1692f by threatening consequences that would not occur. Compl. ¶¶ 2, 3, and 4 of "First Claim for Relief."

### III. DISCUSSION

#### A. Cross Motions for Summary Judgment

In response to the Defendant's motion for summary judgment, the Plaintiff contends that the Defendant misrepresented her debt and that that misrepresentation was intended to harass her and constituted an unfair and unconscionable attempt to collect her debt, in violation of the FDCPA. She essentially raises three arguments in support of her claims: 1) the dunning letter was false because no interest or other charges were actually added to her account after she received the letter; 2) the Defendant had no authority and thus no ability to add interest, collection fees, or other charges; and 3) there is no contract authorizing the collection of interest or collection fees.

The Court will find a triable issue of fact if the Defendant's collection letter is confusing or unclear on its face. *Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944, 948 (7th Cir. 2004). The FDCPA "requires, among other things, that any dunning letter by a debt collector state 'the amount of the debt' that [it is] trying to collect." *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574 (7th Cir. 2004) (citing 15 U.S.C. § 1692g(a)(1); *Chuway*, 362 F.3d at 946-47; *Miller v. McCalla, Rayner, Padrick, Cobb, Nichols & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000)). However, "[i]t is not enough that the dunning letter state the amount of the debt that is due. It must state it clearly enough that the recipient is likely to understand it." *Chuway*, 362 F.3d at 948 (citations omitted).

The Court reviews collection letters from the "'standpoint of the so-called unsophisticated consumer or debtor.'" *Sims v. GC Servs. L.P.*, 445 F.3d 959, 963 (7th Cir. 2006) (quoting *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005)). This is an objective standard, *Lox v. CDA, Ltd.*, 689 F.3d 818, 826 (7th Cir. 2012), and requires a letter to be confusing to "'a significant fraction of the population,'" *id.* at 822 (quoting *Taylor*, 365 F.3d at 574). Where a collection letter is not misleading or confusing on its face, "summary judgment should be granted in favor of the defendant, unless the plaintiff has presented 'objective evidence of confusion' [by the unsophisticated consumer]." *Sims*, 445 F.3d at 963 (citing *Taylor*, 365 F.3d at 575); *see also Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 322-23 (7th Cir. 2016) (describing the various evidentiary requirements for the three categories of false, deceptive, or misleading statements and practices claims).

Here, Crail has presented no objective evidence of confusion. Instead, she contends both that she was misled by the letter and that it is misleading on its face. Specifically, she asserts that no interest or other charges accrued, so the statement in the dunning letter was false.[1] In *Taylor*, the Seventh Circuit addressed the same argument applied to very similar facts. *See* 365 F.3d at 574. At issue were two different dunning letters, one that stated, "if applicable, your account may have or will accrue interest at a rate specified in your contractual agreement with the original creditor," *Taylor*, 365 F.3d at 574, and another that said, "your account balance may be periodically increased due to the addition of accrued interest or other charges as provided in

---

[1] Presumably to support her argument that the statement in the dunning letter is false, Crail also asserts that "there is no language in [the AT&T Residential Service Agreement (the "Agreement")] that states that interest could be charged [after her services were disconnected]." Dkt. No. 48 at 20. This argument, however, is unavailing, as there is nothing in the Agreement that suggests that AT&T was not allowed to impose interest charges after Crail's services were disconnected. The Agreement ostensibly allows AT&T to impose interest charges until it "collect[s] the full amount due under this Agreement." Dkt. No. 46-1 at 5.

4

your agreement with your creditor," *id.* at 575. The plaintiffs who received letters with the first statement above but did not have interest added to their accounts claimed that the letter was false and violated 15 U.S.C. § 1692e. The *Taylor* Court called the claim "downright frivolous," explaining that "[t]he letter didn't say they would [add interest], only that they might." *Taylor*, 365 F.3d at 575. The plaintiff that received a letter with the second statement above argued that the statement was confusing. *Id.* The Seventh Circuit disagreed, noting that "[i]t is no more confusing than the statement in the [first] letter. It is the clear statement of a truism." *Id.*

*Taylor* is clearly analogous to the present case. Crail argues that, because the dunning letter stated that the account balance "may change due to interest or other charges that may be added to the account after the date of this letter," when, in fact, interest and other charges were not added, the Defendant made a false statement in violation of the FDCPA. Given the language of the Agreement, however, such interest and other charges could have continued until the debt was paid. *See, e.g., Davis v. United Recovery Sys., LP*, No. 1:14-cv-657-WTL-DML, 2014 WL 5530142, at *2 (S.D. Ind. Nov. 3, 2014) (concluding that where the original creditor "'presumably . . . could have continued [adding interest] until the debt[ ] was paid.' . . . [I]t was not false for [the debt collector] to notify [the debtor] that her debt *might* accrue interest.") (emphasis in original) (quoting *Taylor*, 365 F.3d at 574); *Toction v. Eagle Accounts Group, Inc.*, No. 1:14-cv-689-WTL-DKL, 2015 WL 127892, at *2-3 (S.D. Ind. Jan. 8, 2015) (denying motion for judgment on the pleadings and referencing the agreement between the original creditor and debtor as determinative of whether interest could be charged on the debtor's account). The "Charges and Payment" section of the Agreement outlines, in relevant part, that:

> You agree to pay no later than the "due by" date specified on your bill. . . . If you do not pay by the due date, we may charge you a collections fee, late payment charge, and/or an interest charge. . . . Our acceptance of late or partial payment (even if marked, "PAID IN FULL" or similar words) or late payment charges shall

5

> not constitute a waiver of any of our rights to collect the full amount due under this Agreement.

Dkt. No. 46-1 at 5. Moreover, the dunning letter used conditional language, that interest or other charges "*may* be added," not that they necessarily would be added. Dkt. No. 48-1 at 3 (emphasis added). As in *Taylor*, the statement in the dunning letter to Crail appears to be a "clear statement of a truism." 365 F.3d at 575.

Crail argues, however, that the facts of her case are distinguishable from those in *Taylor*, making the statement in the dunning letter false rather than the clear statement of a truism. She contends that an April 26, 2013, e-mail from AT&T to outside collection agencies revoked the Defendant's authority to apply interest and other charges to her account, which, in turn, meant that the statement in the dunning letter was false. The email states, in relevant part: "Suspension of the collection fee program indefinitely (effective immediately). Cease all attempts (for all regions/portfolios) to accrue and/or collect the fees." Dkt. No. 48-2 at 16. Though it is unclear from the evidence whether the email had any effect on the Defendant's ability to collect interest or other charges with respect to Crail's account in particular, *see* Dkt. No. 48-2 at 8-9, reading the evidence very generously in Crail's favor, the Court assumes for purposes of this Entry that the email suspended the "collection fee" with regard to her account, which is described in the Agreement as follows:

> **e. Collection Fee.** In the event you fail to pay billed charges when due and it becomes necessary for AT&T to refer your account(s) to a third party for collection, AT&T will charge a collection fee at the maximum percentage permitted by applicable law, but not to exceed 18% to cover the internal collection-related costs AT&T has incurred on such account(s) through and including the date on which AT&T refer(s) the account(s) to such third party.

Dkt. No. 46-1 at 6. Even with this generous reading of the evidence in Crail's favor, the Court cannot leap to the conclusion that the email suspends the Agreement's term permitting the

application of "[a] late payment charge, and/or an interest charge." Dkt. No. 46-1 at 5. As a result, the Agreement would still permit the collection of such charges, and the dunning letter's statement that "[t]his amount may change due to interest or other charges that may be added to the account after the date of this letter" is not false and is in fact the clear statement of a truism.[2] Therefore, there is no triable issue of fact with respect to the language used in the Defendant's dunning letter. The Defendant did not "harass [Crail] in violation of . . . § 1692d by threatening [Crail] with 'interest' and 'additional charges' that would not accrue; misrepresent the character of the debt in violation of 15 U.S.C. § 1692e; or engage in "unfair and unconscionable attempts to collect a debt in violation of . . . § 1692f by threatening [Crail] with consequences that would not occur." Compl. ¶¶ 2, 3, and 4 of "First Claim for Relief."

In her motion for summary judgment, Crail also insinuates that there is no contract permitting the collection of interest and collection fees.[3] She argues that the Defendant is "attempting to collect collection fees to which [she] never consented," Dkt. No. 48 at 1, that "[the] Defendant does not have any documentation signed by [] Crail in which she agreed to be responsible for interest and collection costs," *id.* at 16, and that "[t]he Defendant cannot point to any document that would have given it definitive authority to charge interest or collect costs," *id.*

---

[2] Relying on *Miller*, the Defendant also argues that the statement in its dunning letter was "safe harbor" language based on the Agreement. Dkt. No. 46 at 12 (referring to *Miller*, 214 F.3d at 876). Crail contends that "*Miller* is inappropriate" in this case because "the information furnished by [the] Defendant was not accurate" because AT&T revoked "any such authority [the Defendant] may have had to add collection and/or other charges." Dkt. No. 54 at 7. The Court need not address these arguments because it finds the statement to be accurate and that there is no triable issue of fact with respect to the language used in the Defendant's dunning letter. *See Miller*, 214 F.3d at 876.

[3] Because these arguments are relevant to the Court's resolution of the Defendant's motion for summary judgment, the Court considers them in that context.

at 17. These statements, however, are not supported by the evidence, and it is the Plaintiff's burden to present evidence to support them. *Diaz*, 499 F.3d at 643.

The Defendant has provided the Court with "a true and correct copy of the AT&T Residential Service Agreement which applied to [Crail]'s AT&T Uverse Account" and identified the associated account number.[4] Dkt. No. 46-1 at 1 ¶ 4; *see also* Dkt. No. 46-1 at 3-15. As noted above, the Agreement specified that if Crail did not pay her bills on time, she could be charged "a collections fee, late payment charge, and/or an interest charge." Dkt. No. 46-1 at 5. Even if

---

[4] Although Crail does not formally move to strike Elizabeth Hill's declaration (Dkt. No. 46-1), she challenges its admissibility and the admissibility of the Agreement provided by the Defendant on the bases that "[Hill] does not [] allege sufficient facts in her declaration to establish that she has personal knowledge to authenticate the [Agreement], or that she would know what the applicable agreement looks like" and that "[s]he does not explain what her [job] title means or how she would have knowledge to enter the [Agreement] into evidence." Dkt. No. 54 at 3. The Court rejects these arguments because personal knowledge of the information in the document is not required to lay a foundation for documents, such as the Agreement, which are ostensibly admissible under Federal Rule of Evidence 803(6). *United States v. Christ*, 513 F.3d 762, 770 (7th Cir. 2008) (quoting *United States v. Wables*, 731 F.2d 440, 449 (7th Cir.1984)) (The business records exception "'clearly does not require that the witness have personal knowledge of the entries in the records. The witness need only have knowledge of the procedures under which the records were created.'"). Furthermore, at the summary judgment stage, parties are allowed to support their arguments with "materials that would be inadmissible at trial so long as *facts* therein could later be presented in an admissible form." *Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014) (emphasis in original) (citing Fed. R. Civ. Pro.56(c)(2)-(4)). Such a situation is now before the Court. That is, Hill's declaration would not be admissible at trial, but the Agreement could be presented at trial in an admissible form. At trial, the Defendant could present witness testimony establishing that the Agreement qualifies as a business record under Federal Rule of Evidence 803(6). Therefore, the Court does not strike Hill's declaration or the Agreement.

Crail also contends that there are "procedural defects" regarding other evidence submitted by the Defendant in support of its motion for summary judgment. The same reasoning applies to those contentions. Therefore, the Court does not deny the Defendant's summary judgment motion on the basis of the procedural defects alleged by Crail.

Crail presented to the Court a Motion to Strike Defendant's Response Declarations and Supporting Documents (Dkt. No. 57). The Court **DENIES** that motion as moot because the Court did not consider the evidence presented in the declarations and supporting documents (Dkt. Nos. 55-1 and 55-2) in ruling on the parties' summary judgment motions.

the April 26, 2013, email revoked the collections fee program, the Agreement authorized the collection of late payment and interest charges, thus refuting Crail's statements above.

In addition, Crail does not directly dispute that the Agreement's terms governed her relationship with AT&T with respect to her Uverse account. Rather when asked, "You don't know for sure if those -- what's written in [the Agreement] represents the terms and conditions of your AT&T service agreement; correct?," Crail responded "No, I don't." Dkt. No. 48-5 at 2. Moreover, by the Agreement's terms, Crail was not required to sign a contract for it to be binding: It states: "When you receive this Agreement, your subsequent purchase or use of Services or your payment for them is your agreement to the terms and conditions of this Agreement." Dkt. No. 46-1 at 3. Crail has not created a genuine issue of material fact regarding whether the Agreement governed Crail's relationship with AT&T with respect to her Uverse account. Summary judgment is therefore **GRANTED** in favor of the Defendant. In light of this ruling, the Plaintiff's cross motion for summary judgment is **DENIED**.

## B. Attorneys' Fees

One further issue remains to be addressed. The Defendant argues that it should be awarded fees, pursuant to 15 U.S.C. § 1692k(a)(3) and 28 U.S.C. § 1927, because Crail's claims are frivolous, in bad faith and that she and her counsel "unreasonably and vexatiously compounded this litigation." Dkt. No. 46 at 15. The FDCPA provides that "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award the defendant attorney's fees reasonable in relation to the work expended and costs." 15 U.S.C. § 1692k(a)(3). In addition, federal statute also permits an award of "excess costs, expenses, and attorneys' fees reasonably incurred" because of unreasonable and vexatious conduct. 28 U.S.C. § 1927.

9

In essence, the Defendant asserts that, because Crail's counsel represented the plaintiffs in *Toction* and *Davis*, her counsel should have known that Crail's claims would not succeed and that there was no factual basis to bring Crail's claims. The Defendant further maintains that Crail continued to prosecute her lawsuit "despite an adverse decision from this Court," Dkt. No. 46 at 14, when the magistrate judge reasoned in her entry on Crail's motion to compel [Dkt. No. 36] that "Defendant is right: this action will be determined based on the terms of [the] Plaintiff's [Agreement] and whether AT&T could add interest and/or other charges to her debt," Dkt. No. 36 at 4.

The decisions in *Toction* and *Davis* do not control the outcome of Crail's case. *Wirtz v. City of South Bend*, 669 F.3d 860, 863 (7th Cir. 2012) ("A district court decision does not have precedential effect.") (citing *Midlock v. Apple Vacations West, Inc.*, 406 F.3d 453, 457-58 (7th Cir. 2005) (collecting cases); *see also United States v. Articles of Drug Consisting of 203 Paper Bags*, 818 F.2d 569, 572 (7th Cir. 1987) (A district court decision "is not binding on the circuit, or even on other district judges in the same district."). That Crail's counsel knew of those holdings when he filed this lawsuit is not evidence of bad faith, harassment, or unreasonable or vexatious conduct. That Crail continued to litigate her case after the magistrate judge issued her entry on Crail's motion to compel also does not support the Defendant's argument for fees. As Crail argues, the magistrate judge was making a non-dispositive ruling. For these reasons, the Court denies the Defendant's request for an award of fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) and 28 U.S.C. § 1927.

### IV.   CONCLUSION

For the reasons set forth above, the Court **DENIES** the Plaintiff's motion for summary judgment (Dkt. No. 47) and **GRANTS** the Defendant's motion for summary judgment (Dkt. No.

45), except to the extent that it seeks an award of fees against Crail and/or her counsel. The Plaintiff's motion to strike (Dkt. No. 57) is **DENIED** as moot. This resolves all of the Plaintiff's claims in favor of the Defendant, and final judgment shall be entered accordingly.

    SO ORDERED: 9/2/16

                                    _____
                                    Hon. William T. Lawrence, Judge
                                    United States District Court
                                    Southern District of Indiana

Copies to all counsel of record via electronic notification.